NATIONAL LIFE & ACCIDENT INSURANCE CO., Plaintiff in Error, v. BUSTER NEAL, Defendant in Error, etc.

Western Section. October 19, 1928.

Petition for Certiorari denied by Supreme Court, February 9, 1929.

Ewing, King & King, of Memphis, for plaintiff in error.
Bomer & Passmore, of Memphis, for defendant in error.

SENTER, J. For convenience we will refer to the parties as in the trial below, Buster Neal as plaintiff, and National Life & Accident Insurance Co. as defendant.

The plaintiff, Buster Neal, sued the defendant Insurance Company on a life insurance policy issued by the defendant on the life of

Susie Neal, the wife of plaintiff. The suit originated in a Justice of the Peace court and resulted in a judgment in favor of plaintiff. From this judgment the defendant appealed to the circuit court, where the case was there tried by the special Circuit Judge without the intervention of a jury, resulting in a judgment in the circuit court in favor of plaintiff for the sum of $78 and the costs of the case. A motion for a new trial was made by defendant and overruled by the court. From this action of the court, the defendant prayed and was granted an appeal to this court in the nature of a writ of error, and the appeal has been perfected and errors assigned.

By the assignments, only one question is presented. By the first assignment of error it is contended by appellant that the court erred in rendering judgment for the plaintiff, and not rendering judgment for the defendant because the plaintiff died from a cause excepted under the terms and conditions of the policy. By the second assignment of error it is contended that the court erred in overruling defendant's motion for a new trial, because the undisputed evidence showed that the cause of the death was excepted under and by virtue of the terms and conditions of the policy sued on.

The insurance policy contained the following provision, which is relied upon by the defendant:

"No benefits will be paid for sickness or death resulting from venereal diseases, and the company shall have the right at its option to make such investigation into matters upon which a claim may be based or the subject thereof as it may deem necessary in order to determine its liability hereunder."

The policy contains the further provision or condition:

"The insured shall not be entitled to any benefits for sickness or accident under this policy unless a certificate on the company's form by a regular licensed and practicing physician who is satisfactory to the company, showing the nature of the sickness or injury shall first be furnished the company or its authorized agent."

At the trial of the case the defendant Insurance Company introduced as evidence what purported to be the proofs of death signed by Buster Neal, and also the certificate of the physician showing the cause of death of the insured. The death certificate bearing the signature of M. J. Tendler, M. D., Memphis General Hospital, dated December 21, 1926, states as follows:

"Cause of death was as follows: Gonorrheal acute gynecological peritonitis—gonorrheal septicemia—acute fibruous pericarditis. Duration from personal knowledge or belief,—— years, —— months, —— days. Duration from history given, three years insiduous onset Friday."

While it does not definitely and clearly appear just who procured and filed the death certificate, we think it very probable from the evidence that the certificate of the physician filed with the Superintendent of the defendant in Memphis was procured and filed by the undertaker, to whom an order had been given by plaintiff to the Insurance Company to pay over the amount of the policy. However, the proof of the claim was signed by Buster Neal, and the certificate of the physician was furnished in compliance with the provisions and requirements of the policy.

We think the provision or condition in the policy which makes the exception referred to is a valid and binding provision, and such a provision as the company would be entitled to insert in its policy. (National Life & Accident Ins. Co. v. Bradley, 6 Ct. Civ. Apps., 566; Marks v. Tribe of Ben Hur, 191 Ky., 383, 230 S. W., 540, 15 A. L. R., 1277.)

The proof of death and the death certificate furnished the company, in pursuance of the provision in the policy on the subject, shows on the face of the physician's certificate that the cause of insured's death came within the excepted condition, a venereal disease.

Under the assignments of error it is contended that where the proof of death and the doctor's certificate as to the cause of death furnished the defendant by the plaintiff affirmatively shows that the insured died from an excepted cause, it is conclusive against liability of the company, unless by proper pleading or notice given within a reasonable time that the cause of death as shown by the proof of death was the result of a mistake, and that plaintiff would rely upon evidence that the death was not within the excepted clause in the policy. Among other cases and authorities cited by appellant in support of this contention, is the case of Travelers Ins. Co. v. Mellick, 65 Fed., 178, 27 L. R. A., 629. In that case it appears that several days before the death of the insured, who was a physician, the insured accidentally shot himself in the foot resulting in tetanus or lock-jaw, and that the insured suffered intense pain and agony from this disease, and that it almost invariably results fatally. While the patient was alone and unguarded and while suffering intensely from the disease, he slashed his throat with a scalpel, severing his trachea and jugular viens. Death by suicide under the provisions of the policy relieved the insurance company of liability. The suit was brought by the administrator of the estate of the deceased, and in his declaration he alleged that the death of the deceased was caused by an accidental gun shot wound in his foot. The answer denied this allegation and alleged that his death was caused by his cutting his own throat with a scalpel, and that death resulted from intentional self-inflicted injury. The plaintiff by plea denied these allegations

of the answer. In that case the proof of death seems to have stated the cause as suicide by cutting his own throat. It was held by the lower court in that case that this statement contained in the proof of death, while it could be looked to and considered, that it was not in any manner conclusive; that they should only give it such weight as they thought it might be entitled to receive; "that, whatever cause of death might have been alleged in the proof of death, he was at liberty on the trial, to show that the death resulted from some other or different cause, and that, in determining the cause of death, they should be governed by all the evidence that had been introduced upon that question." The court held that the above was not a proper statement of the rule, stating:

"The better rule upon this subject is that statements of this nature in proofs of loss are binding and conclusive upon the party who makes them until, by pleading or otherwise, he gives the insurance company reasonable notice that he was mistaken in his statement and that he would endeavor to show that the death was the result of a different cause from that stated in his proofs. After the insurance company has received due notice of this fact, the proofs have the probative force of solemn admissions under oath against interest, but they are not conclusive." (Citing Mutual Ben. Life Ins. Co. v. Newton, 89 U. S. 22; Keels v. Mutual Reserve Fund Life Ass'n, 29 Fed. Rep., 198; McMaster v. Ins. Co. of N. A., 55 N. Y., 222, 14 Am. Rep., 239.)

We are of the opinion that the rule as above stated is well supported by authority, and is sound. The plaintiff did not by any pleading or by any notice to the company before suit, or until the trial of the case, indicate an intention to show that the death resulted from any other cause other than that stated in the proofs of death furnished the company. However, at the trial of the case the defendant introduced what purports to be the hospital record covering a record of the patient's case from the time she was admitted to the hospital until her death. This record was introduced as evidence by the defendant insurance company and covers several different sheets, containing entries, statements and diagnosis by the attending physician, the hospital physicians and the internes at the hospital. From these several sheets, constituting the hospital record, there appears to be a diversity of opinion among the physicians and internes as to the exact nature of the disease from which the patient was suffering. While the record made up at the hospital shows that the patient was affected with the venereal disease of gonorrhea of about three years' duration, yet other portions of the hospital record disclose that she was also suffering from appendicitis; other portions of the record indicate that her condition was due at least in part to an abortion. Without going into a detailed statement of all

that is disclosed by the hospital record, we think it clear that the exact cause of the death was not fully concurred in by the several physicians and internes at the hospital who made up the hospital record and the history of the case.

The introduction of this hospital record by the defendant insurance company, to the extent as above indicated, creates a decided conflict in the evidence as to the actual cause of the death of this young negro woman. In certain particulars it is in conflict with the certificate of death showing the cause of death which was filed with the company.

Admitting the soundness of the rule as above set forth in the Travellers Ins. Co. v. Melick case, supra, and were it not for the hospital record introduced in evidence by the defendant at the trial of the case, we would say that under the rule as above stated the statements contained in the proofs of death furnished the company would be a conclusive admission against the plaintiff, because by no pleading or otherwise did plaintiff give the defendant Insurance Company notice that he would rely on cause of death other than as stated in the proof of death. But when the defendant saw proper to introduce as evidence the hospital record of the case of the patient, which afforded some evidence that the death was not the result of the exception contained in the policy, the rule as above stated cannot be relied upon. Under this hospital record it cannot be said that there is not some evidence tending to show that the death was caused by appendicitis, an abortion, or some other cause, other than the venereal disease.

Since this case was tried by a special Circuit Judge without the intervention of a jury, the judgment of the trial judge has the force and effect of a jury verdict, and if there is any material evidence to support the judgment it cannot be disturbed on appeal.

It results that the assignments of error are overruled, and the judgment is affirmed. Judgment will be entered here in favor of plaintiff and against the defendant insurance company and sureties on the appeal bond, for the amount of the judgment below, with interest thereon from the date of the judgment, and the cost of the cause, including the cost of this appeal.

Heiskell and Owen, JJ., concur.